App. Div. 482, 82 N. Y. Supp. 411; Charmar v. Hibbler, 31 App. Div. 477, 52 N. Y. Supp. 212; Phœnix Bridge Co. v. Creem, 102 App. Div. 354, 92 N. Y. Supp. 855.

The judgment of the City Court of Albany is affirmed, with costs.

---

### HOLLY REALTY CO. v. WORTMANN.

(Municipal Court of City of New York, Borough of Manhattan, Sixth District. February 4, 1910.)

1. LIS PENDENS (§ 25*)—OPERATION AND EFFECT—MORTGAGE FORECLOSURE.

A lis pendens in a mortgage foreclosure is notice to all persons dealing with defendant after its filing, and warns them that defendant has no right, as against the mortgagee, plaintiff, or subsequent purchasers under the judgment, to further incumber the property; and a lessee of the property, who renews the lease after filing of the lis pendens, takes the risk of having it annulled by the foreclosure as if he had been a party to the action.

[Ed. Note.—For other cases, see Lis Pendens, Cent. Dig. § 47; Dec. Dig. § 25.*]

2. LIS PENDENS (§ 26*)—FORECLOSURE—RIGHTS OF PURCHASER AS TO LEASE—RATIFICATION.

The purchaser at foreclosure sale may at his option treat a renewal of a lease of the premises pending foreclosure after the filing of the lis pendens as valid by ratification or express agreement.

[Ed. Note.—For other cases, see Lis Pendens, Dec. Dig. § 26.*]

3. LIS PENDENS (§ 26*)—FORECLOSURE—RIGHTS OF PURCHASER—ESTOPPEL.

The purchaser at mortgage foreclosure is estopped to claim that the renewal of a lease of the premises made after the filing of the lis pendens was extinguished by the foreclosure, where after becoming the purchaser he received the instrument of renewal and accepted rent thereunder.

[Ed. Note.—For other cases, see Lis Pendens, Dec. Dig. § 26.*]

4. RECEIVERS (§ 87*)—RENEWAL OF LEASE—PAYMENT OF RENT.

Where the mortgagee of leased premises did not demand the rent during foreclosure, the tenant properly paid it to the receiver of the mortgagor's property, who renewed the lease after commencement of the action for foreclosure, until the purchaser became the owner under the referee's deed.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 161; Dec. Dig. § 87.*]

5. RECEIVERS (§ 87*)—RIGHTS OF RECEIVER—COLLECTION OF RENT.

Where the mortgaged property was in the hands of a receiver for the owner before the commencement of action for foreclosure, in the absence of a demand by the mortgagee for the rent, the receiver is entitled to collect the rent pending foreclosure.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 161; Dec. Dig. § 87.*]

6. LANDLORD AND TENANT (§ 88*)—RENEWAL OF LEASE—VALIDITY—RATIFICATION BY SUBSEQUENT PURCHASER.

Where the receiver for the owner of mortgaged property renewed a lease after the commencement of an action to foreclose and the filing of the lis pendens, and after the sale the renewal lease was given to the purchaser, who collected the rent for several months without objection to the renewal by either party or claim that it was extinguished by foreclosure, the renewal lease was ratified, and the lessee is bound thereby for the remainder of the term.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 88.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

7. LANDLORD AND TENANT (§ 15*)—RENEWAL PENDING FORECLOSURE—MORT-
GAGE FORECLOSURE—EFFECT OF ATTORNMENT.

By attorning to the purchaser at mortgage foreclosure of the lessee un-
der a lease made after commencement of an action to foreclose and filing
of a lis pendens, a new tenancy was not created, but the lease was con-
tinued.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 13–
16; Dec. Dig. § 15.*]

Action by the Holly Realty Company against Morris Wortmann.
Judgment for plaintiff.

Emanuel S. Cahn, for plaintiff.
Jonas J. Hegt, for defendant.

MARKS, J. On August 31, 1905, the defendant hired from Arthur
E. Silverman for a term of three years from October 1, 1905, at the
yearly rental of $1,400, payable in equal monthly payments in advance
on the 1st of each month, a suite of rooms in premises known as
"Arthur Hall." Before this lease expired, and some time prior to
July 1, 1908, the Arthur E. Silverman Building Company became the
owner of the premises, and defendant continued in possession under
his lease. On or about July 1, 1908, in a proceeding to dissolve the
company, Albert Hirsh was appointed temporary receiver.

On August 18, 1908, the Twelfth Ward Bank of New York com-
menced an action to foreclose a mortgage which it held upon the prem-
ises, and on that day a notice of pendency of action was filed. The
defendant was not made a party to that action, but more than a month
after the filing of the lis pendens, to wit, on September 25, 1908, Al-
bert Hirsh, the temporary receiver of the owner of the property, and
the defendant, entered into a written agreement whereby the lease
hereinbefore mentioned, expiring September 30, 1908, was extended
for a further term of one year from the last-named date, upon the
same terms, agreements, and covenants as were contained in the
original lease. After such extension the defendant continued in pos-
session of the premises. In October, 1908, a decree of foreclosure
and sale was entered, the premises sold thereunder, and plaintiff be-
came the owner under such sale, in December, 1908.

The original lease and the renewal agreement made between the
receiver and the defendant and annexed to the lease were not assigned
to the plaintiff, but both instruments were delivered to the plaintiff by
the receiver. The rent per month under the lease was $116.66, and
the defendant paid to the plaintiff, after the latter became the owner,
rent for the months of January to May, 1909, inclusive. On April
30th the defendant gave 30 days' notice to the plaintiff that he intended
to quit the premises, and before the expiration of such 30 days he
moved therefrom.

The defendant claims that, as the renewal of the lease was made aft-
er the filing of the notice of pendency of action, the rights and interests
of the receiver and the defendant under the lease were cut off and ex-
tinguished by the judgment of foreclosure and sale made in October,
and that defendant's occupancy thereafter was either as a tenant at

will or at sufferance, or as a monthly tenant, and that his notice that he intended to quit and subsequent quitting terminated his liability under the renewal; while the plaintiff claims that there was an attornment to the plaintiff after it became the owner, and the defendant must be deemed to have continued in possession with the plaintiff as his landlord under the lease as renewed, and that the defendant is liable under the renewal for rent for the months of June, July, August, and September, the remaining months of the term for which this action is brought.

The lis pendens was notice to all persons dealing with a defendant in the action, after its filing, and warned them that such defendant against whom the notice was indexed had no right as against the mortgagee, the plaintiff, or subsequent purchasers under the judgment, to further incumber the property; and if such incumbrancer, or, as in this case, the defendant in this action, chose to take a lease after the filing of the lis pendens, he took the risk of having it declared of no effect and cut off as if he had been a party to the foreclosure suit. But the plaintiff in the foreclosure suit, if he became the purchaser at the sale, or any other person purchasing under the judgment of foreclosure, could at his option treat the renewal of the lease as a valid, subsisting hiring by ratification or express agreement. Such purchaser would be estopped from claiming it as cut off by the foreclosure if, after he became the purchaser, he received the instrument or with knowledge of its existence accepted the tenant's rent thereunder.

The plaintiff could have removed the defendant from the premises after it obtained the referee's deed, and treated the renewal as void so far as its title was concerned; but having knowledge of the renewal, and receiving the agreement renewing the lease from the person who had owned the property at the time it was made, the plaintiff did not see fit to declare the defendant as a trespasser, or as one in possession without right, as he in fact was, but it chose to ratify the lease by accepting rent from the tenant. As the defendant had not attorned to the mortgagee, and the mortgagee had made no demand for the rent during the foreclosure proceedings, the defendant was protected in paying the lessor, the temporary receiver, who renewed the lease, until plaintiff became the owner under the referee's deed.

Until the mortgagee stepped in the temporary receiver of the owner of the property, from the time he renewed the lease until his rights were cut off by the decree in foreclosure and until the plaintiff became the owner, could have demanded rent from the defendant, and the defendant could not escape payment thereof during that time. But when the plaintiff became the owner, and for months thereafter the defendant attorned to the plaintiff, neither of the parties, in my opinion, is in a position thereafter to disclaim responsibility and liability under the lease. The plaintiff could not evict the defendant after it received the renewal agreement and lease, and with knowledge of its existence acted under it and received the rent; and the defendant, after continuing in possession and attorning to the plaintiff, cannot now say that the lease is void, and that he was in possession without any agree-

ment from the time the plaintiff took title, until he moved in May, or that he was a tenant at will or at sufferance.

After the plaintiff obtained and knew of the renewal of the lease, and after it had the right to eject the defendant by a writ of assistance under the judgment of foreclosure and sale, permission by it to the defendant to occupy the premises must be presumed from the possession by the defendant, and the subsequent payment and acceptance of the rent reserved in the lease for a number of months. These acts, in my opinion, constitute such an attornment and such a recognition of the relation of landlord and tenant as to estop both parties from disputing each other's rights under the lease. By attorning, the defendant received the plaintiff as a new landlord; and, accepting the attornment, with knowledge of the terms under which the attornment was made, the plaintiff received the defendant as a tenant. The landlord cannot thereafter, during the term of the lease, by writ of assistance, remove the defendant or maintain summary proceedings to remove him except for nonpayment of rent, and the defendant cannot say he is in possession except in recognition of and under the terms of the lease.

The defendant claims he is not liable for the rent for the balance of the term of the lease after he vacated the premises, for the reason that his occupation was extinguished by the foreclosure and after judgment was entered such occupation was unlawful, and that there was no privity of estate or contract between him and the plaintiff necessary to create a liability on his part. As the terms and conditions of the lease as renewed by the temporary receiver were not departed from by the plaintiff and the defendant, it was not necessary to create, and the attornment did not create, a new tenancy; but such attornment was a continuation of the lease made by the temporary receiver. Austin v. Ahearne, 61 N. Y. 6. The defendant is presumed to know that the lis pendens was filed. It was notice to him. If he chose to make a lease with this notice, he recognized the title of his lessor as it then existed. In substance he agreed to accept it as a good title and a good foundation for the term bargained for. Tilyou v. Reynolds, 108 N. Y. 558, 564, 15 N. E. 534.

When the plaintiff became purchaser and owner, the defendant did not disclaim holding of him, and enter afresh under, or make new terms with, the plaintiff, but continued on under the tenancy created by the renewal made by the receiver. The plaintiff was simply put in place of the temporary receiver, the original landlord, and, in my opinion, it makes no difference whether the lease under which the tenant holds was void or voidable, made by some one having no right to make it, or made by parties with notice that a lis pendens had cut off the right of the lessor to make it, and the right of the tenant to enforce or hold under it after the purchaser under foreclosure obtained title, provided the latter and the tenant chose afterwards to recognize it as valid or by attornment adopted it. Both are thereafter bound by its terms.

In the case of United Realty & Mortgage Co. v. Stoothoff, 133 App. Div. 245, 117 N. Y. Supp. 245, the person making the lease had no power to make it and was not the owner of the premises when he

made it.  Through various conveyances the petitioner in that proceeding became the owner of the building, the tenant remaining in possession.  The petitioner received the lease, which was for a term of years, and then attempted to dispossess the tenant, claiming he was a tenant from month to month.  It was held in this case that by accepting the attornment the landlord adopted the lease.  Mr. Justice Miller, writing the opinion of the court, says:

"There is evidence to show that the lease to the respondent was delivered to the petitioner and to its grantor when each acquired title, that each accepted the attornment of the respondent to it as landlord, and that the respondent again attorned to the petitioner upon its re-entry for breach of the Cohen lease.  The petitioner did not raise any objection to the respondent's lease until January, 1908, and then continued to accept the monthly rental up to and including September, 1908, when this proceeding was instituted, asserting that the respondent was a tenant from month to month."

In the case at bar the defendant did not question the plaintiff's rights or the validity of his lease until May, 1909, after attorning for months.  The holding of the defendant and possession was under the original lease and its renewal.  The renewal was not void, although the judgment in foreclosure cut off its lien and effect.  The lessor had power to make it.  It was valid so far as its execution was concerned, and as between the parties was a complete instrument.  It was within the power of the purchaser, by writ of assistance, to remove the defendant and disavow the lease, or accept and ratify it, and when thus ratified it would become valid and effectual for every purpose.  Anderson v. Connor, 43 Misc. Rep. 384, 87 N. Y. Supp. 449.

In the case last cited, a lease was made without authority, and it was held that, if the person entitled to the rent thereafter accepts it, the lease is ratified by such person, and where transfers of the property are made, all with knowledge of the tenancy, and rent is accepted from the tenant at the rate fixed by the lease, the grantee thus ratifies the lease and cannot dispossess the tenant so long as he is willing to pay the rent reserved in the lease, and that, under such circumstances, the last grantee would not have the right to increase the rent and attempt to dispossess the tenant for failure to pay such increased rent.  In the opinion of the court in this case Mr. Justice Scott says (page 388 of 43 Misc. Rep., page 451 of 87 N. Y. Supp.):

"Each grantee, including these landlords, after accepting conveyances of the property subject to the respondent's tenancy and lease, and having by presumption of law full knowledge of the terms of such lease, accepted respondent's attornment to them as landlords, and, without exacting or making any new lease or agreement, received the rent as it became due.  The result of this was a recognition and reaffirmation of respondent's lease on the part both of the tenant and the landlords.  It is well settled in this state that where a lease was originally invalid for want of title in the lessor, and a subsequent purchaser or the holder of the true title accepts attornment from the lessee under the invalid lease, with knowledge of the terms and conditions of the lease, he validates the lease."

Judgment for plaintiff for $480.66.  Five days' stay.