■Stanley P. Danzig, J.
The plaintiff commenced this suit to recover rent due on .suite 1017 in 250 West 57th Street, New York City. The defendant prime tenant Continental American Life Insurance Co. (Continental), .subleased the subject premises to the third-party defendant, L. J. Goldstein & Co., Inc. (Goldstein), from May 1, 1971 to November 29, 1973. The evidence reveals that sometime in the spring of 1972 the subtenant vacated the *57 premises, and the last payment by Goldstein was applied against the rent for July, 1972. It is undisputed that prior to negotiation of the sublease, the subtenant was ¡also a prime tenant on a lease with plaintiff for suite 1016 immediately adjacent to that subleased from defendant Continental, and that plaintiff agreed to the sublease at issue herein.
During the term of the sublease, the subtenant Goldstein joined suite 1017 with suite 1016 by removing the partition separating the two apartments. At the same time, the door to one of the suites was sealed and all interior partitions were removed so that suites 1016 and 1017 became one large room.
Initially the subtenant paid rent to the prime tenant who, in turn, paid the plaintiff. But beginning in October, 1971, the landlord collected the rent directly from the subtenant Goldstein and the prime tenant had no further .communication with either party with respect to the disputed tenancy. Continental had no knowledge of the subtenant’s default in rent payments until its receipt of the letter of March 16, 1973 from counsel for plaintiff demanding the payment of rent in arrears from July, 1972. At no time .prior to that date did the plaintiff give notice of the default to the defendant Continental.
On June 13, 1972, the plaintiff, by its agent Helmsley-Spear, commenced a summary proceeding to evict Goldstein from suite 1016. That proceeding was terminated pursuant to stipulation by which the tenant Goldstein agreed to voluntarily vacate the premises on or before .September 30,1972. The institution of the eviction proceeding against Goldstein is evidence that plaintiff knew nr .should have known that suite 1017, subleased from defendant Continental, would also be likely to become vacant on or before that date. In any event, the plaintiff did, in fact, know in July, 1972 that Goldstein had defaulted in rent payments on .suite 1017 and that Continental had no notice or means of knowing of such default.
Paragraph 45 of the rider to the lease dated November 12, 1968 between plaintiff and defendant Continental provides: “ Lessor shall not unreasonably withhold consent to an assignment of this léase or to a subletting of all but not part of the demised .premises, provided that (a) tenant designate the managing agent as tenant’s exclusive agent to effect such assignment or sublease ’ ’. Thus, for the purpose of negotiating and concluding the sublease, the plaintiff imposed the services of its own agent upon the prime tenant. Thereafter, beginning on October 1, 1971, the managing agent voluntarily undertook to .serve as Continental’s agent for the collection of rent and maintenance *58 of the premises. As Continental’s exclusive 'agent with respect to the 'sublet premises, Helmsley-Spear had the duty to advise Continental immediately upon Goldstein’s default in rent payments ,so that Continental would have an opportunity to act timely to remedy the situation. (Hurley v. John, Hancock Mut. Life Ins. Co., 247 App. Div. 547, 550.) Having once assumed the role of agent, even gratuitously, Helmsley-Spear 'had the duty of a fiduciary to perform reasonably with due diligence. (Berg v. Hoffman, 275 N. Y. 132.)
Helmsley-Spear’s failure to perform its duty greatly prejudiced the rights of Continental. Certainly, had .Continental known that the rent was in arrears, it could have made some efforts between July, 1972, when the initial default occurred, and March 16, 1973, when it first learned of the default, to find a new tenant. As a direct result of Helmsley-Spear’s negligence, Continental was deprived of the opportunity to mitigate its damages 'and was caused irreparable harm for which HelmsleySpear must be held liable. (Barile v. Wright, 256 N. Y. 1; Stedge v. Hoover, 24 A D 2d 911.)
Furthermore, in view of the pre-existing superior agency relationship between Helmsley-Spear and the plaintiff, Fisk Building Associates (Fisk), pursuant to which authority, Helmsley-Spear initially undertook to act as agent for Continental under Continental’s contract with Fisk, Fisk must be .charged with the negligence of Helmsley-Spear so as to estop Fisk from recovering against Continental for the nonpayment of rent which it was Helmsley-Spear’.s duty to collect. Irving Schneider, as executive vice-president of Helmsley-Spear, executed the lease of November 12, 1968 to Continental on behalf of Fisk. Irving Schneider is 'also listed as' a principal in Fisk and, as such, .according to plaintiff’s own argument, had the express authority to execute the lease. This identity of principals between Helmsley-Spear and Fisk, particularly since it relates directly to the leasehold herein, demand's that Helmsley-Spear he treated as standing in the place of Fisk, and that Fisk be charged with constructive knowledge of and responsibility for the negligence of its own agent. (Spett v. President Monroe Bldg. & Mfg. Corp., 19 N Y 2d 203.) A principal acting by his agent is responsible for the agent’s dereliction of duty owed to another. (Albans Holding Corp. v. Blum, 271 App. Div. 791.) Fisk is, therefore, liable for the negligence of Helmsley-'Spear in failing to give timely notice of Goldstein’s default. The inordinately lengthy delay in giving notice constitutes a waiver on Fisk’s part of its right to collect rent from Continental through the month of March, 1973.
*59 Plaintiff has also, however, claimed rent for the balance of the lease term from April to November 1973. The ¡defendant argues that no .rent may be recovered' because the original lease of November 12, 1968 was executed on behalf of Fisk by Irving Schneider as ¡a principal of Helmsley-Spear, whose authority to act as agent was not written. Defendant therefore concludes that the lease is void under the Statute of Frauds.
Fisk is not a corporation but a partnership. A copy of the lease agreement of September 30, 1953 between 250 West 57th Street Associates, the record owner of the premises, and Fisk, lessee of the entire building, reveals that Irving Schneider was one of the original principals of 250 West 57th Street Associates and subsequent documents reveal that he was also a principal in Fisk on July 18, 1969 if not before that date. A partner has the authority to bind the partnership and his specific authority to do so need not be written. (Partnership Law, § 20; People v. Esrig, 240 App. Div. 300, 302.) While the documents in evidence do not clearly show Mr. ¡Schneider to have been a partner in Fisk at the time the lease was executed on November 12, 1968, his authority to act as such on behalf of Fisk must be deemed to have been ratified by the subsequent ¡acts of Fisk in permitting Continental to take possession and by collecting rent pursuant to the lease. (Gibbs Oil Co. v. Elowits, 9 Misc 2d 843.) Schneider’s status .as a partner in Fisk and thus its agent during the term of the lease had the effect of validating Schneider’s authority to bind Fisk retroactive to the date of execution of the lease. (See Columbia v. Lee, 243 App. Div. 361.) Continental’s defense of the Statute of Frauds must fail and the plaintiff Fisk may recover the rent due under the lease with Continental for the months of April to November, 1973, a total of eight months.
The parties stipulated in court that any recovery would be computed at the rate of $511.40 per month, allowing for some adjustment for electricity and the escalation clause in the lease. Judgment will therefore be entered in favor of plaintiff Fisk in the sum of $4,091.20, with interest from November 30, 1973.